Vedder<br>v.<br>Evertson.

---

VEDDER *vs.* EVERTSON.

Where the testator, by his will, devised his real estate to his wife during her widowhood, with remainder to his six sons in fee, and bequeathed certain personal estate to his daughter, and then directed that if any of his sons or his daughter should die without issue, the survivors should have what was given by the will to the son or daughter so dying : *Held*, that the limitation over to the survivors was good as an executory devise, and took effect upon the death of one of the sons without issue, although such son survived his mother.

Where the first limitation over in a devise is executory, all the subsequent limitations will also be executory until the first limitation vests in possession, although in their nature the subsequent limitations are contingent remainders. But the moment the first limitation over vests in possession, the subsequent limitations will be changed from executory devises to remainders, provided they can take effect as remainders.

If the first limitation over is not of such an estate as will support the second as a remainder, and such second limitation over can only be valid as an executory devise, the nature of the second limitation will not be altered by the vesting of the first limitation in possession before the happening of the contingency upon which the second limitation depends.

When a limitation over can be supported as a contingent remainder, it will never be construed as an executory devise.

Whether a party will be compelled specifically to perform a contract for the purchase of his own land, where there has been no mistake as to the facts on which his title depended ? Quære.

THIS was a bill for the specific performance of a contract for <span style="float:right">May 15.</span>
the purchase of several lots of land. One of the objections made on the part of the purchaser to a specific performance

was, that since the making of the contract, he had discovered that he was himself the legal owner of a part of the land. Another objection raised on the part of the defendant was, that the vendor had previous to his contract with the defendant agreed to sell a small portion of the land, being the whole of his interest in one of the lots; and that he had, since the defendant's purchase, actually conveyed that part of the premises, pursuant to such previous agreement.

*T. Van Vechten*, for the complainant. The vendor's title in severalty is under a judgment in partition in a suit commenced and prosecuted by the defendant, an attorney of the supreme court, as plaintiff, in propria persona *against the vendor and others, stating their respective rights as tenants in common to be derived by devise under the will of Myndert Veeder. The petition alleged the death of Simon Veeder, one of the devisees, without issue, and that his share of the estate passed by the provisions of the will to the other devisees therein named, including the vendor. (1 *John. Cas.* 516. 2 *Id.* 51, 60.) By the partition, the lots contracted for by the defendant, except three of them, were assigned in severalty to the vendor; and the three excepted lots he purchased at a sheriff's sale, under an execution issued by the defendant for the costs of the partition; of all which the defendant had full notice at the time of the agreement in question. It seems, therefore, not a little ungracious on his part to pretend now that he was ignorant that the rights which he then set up in himself and the other parties as tenants in common, as the basis of the partition, were not as he then stated them. And in the absence of any semblance of proof to give color to this pretence, it cannot merit a serious reply. The defendant contends that the devise to Simon Veeder, and his co-devisees, after the re-marriage or death of the testator's widow, vested an absolute fee in them; and that the executory devise over to the surviving devisees, in case any of the testator's sons died without lawful issue, is nugatory. Non constat that the wife survived the testator. Hence there is no evidence before the court to render the doctrine contended for by the defendant's counsel applicable, namely, that Simon

took a vested remainder in fee, in consequence of the devise for life to his mother.

Admitting, for argument's sake, that the wife survived the testator, it did not affect the executory devise over of Simon's share, upon his death without lawful issue, to the surviving devisees. Upon this point, the defendant is estopped by his own record in the partition suit. Nor is the argument founded upon the assumption that Simon took an estate in tail which was converted into a fee by the statute of descents, &c. more tenable. The will gave him a contingent fee, determinable in favor of the surviving devisees in the event of his death without leaving issue. There is nothing in the will to support the position that he was tenant in tail. For that is repugnant to the plain and declared intent of the testator, which must be the governing rule in construing the will. (*Jackson* v. *Billinger*, 18 *John. R.* 368 *to* 382, *and the cases there cited.*) The pecuniary charge upon the devisees can have no influence upon the question, inasmuch as by the terms of the will the executory devise over is subject to the charge; nor is it confined, as suggested by the defendant's counsel, to the slaves, but extends to all the subjects of devise in the will. The allegation that the vendor, by the complainant's own shewing, had no title to the premises which he agreed to convey, is a gratuitous assertion, directly repugnant to the defendant's record of partition, and his own agreement set forth and admitted by the pleadings; which recognizes the vendor's rights under and according to the partition.

The release from Van Rensselaer was the result of a compromise, and covered the vendor's whole interest which he sold to the defendant; and it was made according to the defendant's own wishes, to clear the way for the consummation of the agreement in question. The amended answer admits that the defendant had notice of the subsisting contract on the part of the vendor to convey the one and three fourth acres to McKown, when he made the agreement in question. It was therefore no surprize upon him. With full knowledge of McKown's prior claim, and his refusal to relinquish it, the defendant entered into possession of the residue of the bargained premises, stripped it of the wood, appropriated the whole to his own

use, and disposed of the greater part of the premises to fair purchasers, and received the consideration money. All the defendant can equitably ask for is a rateable deduction from the stipulated consideration, to be ascertained by the report of a master. If the defendant meant to rescind the contract on that ground, he should have done it on the first notice of the agreement, &c. with McKown. (3 *John. Ch. Cas.* 23. 17 *John. Rep.* 437.) There is no proof in the cause from which it can be inferred that the premises conveyed to McKown formed any inducement to the defendant's purchase, but the evidence is abundant to show that he had no wish to rescind the agreement in question, on the ground of McKown's prior equity to the one and three fourth acres, and his determination to retain and enforce it. (*Sugden's Law of Vendors,* 183, 189, 192. 5 *Vesey, jun.* 828. 10 *Id.* 306. 1 *Id.* 221. 6 *Id.* 675, 678. 7 *Id.* 270. 2 *Bern. Ch. Cas.* 118. 1 *Id.* 140. 2 *Dick. Rep.* 594. 2 *Eq. Cas. Abr.* 689.) The rule is that when the main object of the purchaser is not defeated, or the lack of title in the vendor is to an inconsiderable part of the bargained premises, equity will enforce a specific performance at a proportionate price. So also if the purchaser, after notice of the vendor's defect of title to a part, proceeds to appropriate the residue of the premises ; for this is considered as a waiver of his right to rescind, and an election to have the contract executed for the residue. There might, perhaps, be room to doubt whether a court of law would sustain a suit, when it appeared the plaintiff could not fulfil in toto, although the part which he could not fulfil was small, and the defendant had appropriated the residue with full notice, &c. as is the case here.

*J. L. Wendell,* for the defendant. The complainant asks for a specific performance, which is resisted on various grounds.

1. The defendant contends that the eight lots are his own property ; that he incautiously and improvidently entered into the contract to buy the same ; and that he is not bound to perform the contract.

The first question is, what estate did Simon take in the premises ? The counsel for the complainant says that he had a contingent fee, determinable by his death without issue. On

1832.

Vedder
v.
Evertson.

the part of the defendant, it is contended that Simon took an estate tail at common law, which, by the statute abolishing entails, was converted into a fee simple absolute. By the devise to him, his heirs and assigns, he would have taken a fee; but an estate over being given to his brothers and sister on his dying without lawful issue of his body, the latter words converted the interest devised to him into an estate tail.

If the devise over be considered an executory devise, still nothing can be claimed under it by the brothers and sister of Simon. The estate was in the first instance given to the widow of Myndert, the father, during widowhood or life, with a limitation over to the six sons of the testator in severalty in fee, and then a second limitation to the survivor or survivors of the sons, in case of the death of one or more of them, without lawful issue of his or their bodies. In 1759 the testator died; and the fair presumption is, that his widow did not long survive him. Simon, therefore, must have entered into possession. In 1787 a judgment was obtained against Simon and his brother Abraham in favor of John Glen, under which judgment the premises in question were sold in May, 1792, and bought in by William Cooper, under whom, by sundry mesne conveyances, the defendant claims to be the owner of the premises. Simon did not die until 1799; so that, at all events, those claiming under him were in possession from 1792 until 1799. Allowing, therefore, the limitation over to the brothers and sister of Simon to operate as an executory devise, the first limitation having vested in possession, that which followed vested in interest at the same time, ceased to be executory, and became a mere vested remainder, subject to all the incidents of remainders. The rule on this subject is laid down in 2 *Saund.* 388, *i*, where it is said, " with regard to executory devises, it is a rule that wherever one limitation of a devise is taken to be executory, all subsequent limitations must likewise be so taken. However, it seems to be established, that whenever the first limitation vests in possession, those that follow vest in interest at the same time and cease to be executory, and become mere vested remainders and subject to all the incidents of remainders." The estate, therefore, of the survivors was turned into a remainder, when the executory de-

vise took effect in favor of Simon. The devise to the survivors ceasing to be executory, Simon became seised in fee tail by necessary implication of law, with a remainder expectant in favor of the survivors ; and·if our statute abolishing estates in fee tail had not been passed, this remainder might have been destroyed by a fine or recovery by Simon. But by the statute of 1786, the estate being converted into an estate in fee, the trouble of suffering a common recovery was saved. The rule laid down in *Saunders* was recognized by the supreme court in *Lion* v. *Burtiss,* (20 *John. R.* 489,) and was held not to conflict with *Anderson* v. *Jackson,* (16 *Id.* 382,) which was one of the cases arising under the will of Medcef Eden, and was subsequently confirmed in the court of errors. (2 *Cowen's Rep.* 389.)

In *Cruise* it is said, when the devise over is after an estate tail, it is not an executory devise, but a contingent remainder. (*Cruise's Dig. tit.* 38, *ch.* 18, § 8, 17, 29, 30, 31.) Again ; a remainder is contingent when it is limited to take effect on an event which may never happen, or on a condition which may never be performed. (*Cruise's Dig. tit.* 16, *ch.* 1, § 8, 9, 46.) And again ; whenever a future interest in land is so devised as to fall within the rules laid down for the limitation of concontingent remainders, such devise shall be construed to be a contingent remainder, and not an executory devise. (*Cruise's Dig. tit.* 38, *ch.* 17, § 11. 2 *Cowen's Rep.* 389.)

It is not intended on the part of the defendant to call in question the principle established by the repeated decisions of our courts on the will of Medcef Eden, that a devise in these words, " If either of my said sons should depart this life without lawful issue, his share or part shall go to the survivor," is good as an executory devise. But it is insisted that the case now under consideration depends upon different principles. In the cases arising under Eden's will, there was but one limitation over between the brothers Joseph and Medcef. Here there are two ; for after the estate is given to the widow, it is given first to the sons, and next to the survivors. This case is supposed to be very similar to that of *Jackson* v. *Billinger,* (18 *John. R.* 368,) and it is respectfully hoped it will receive a similar adjudication. There a life estate was given in the first in-

stance to the widow of the testator, then the estate was given to the son of the testator, after which followed a clause, that if the son happend to die unmarried or without lawful issue, the estate should descend to the next heir of the name of the testator. The testator died in 1775, and the son in 1817, without issue. In an action by the next heir of the testator of his name, decided in 1820, it was held that the testator's son took an estate tail by implication; that the devise over could not be supported as a good executory devise, and that the statute abolishing entails converted the estate tail into a fee simple absolute. Stress was laid in the decision of the court upon the word survivor not having been used; but if the court had adverted to the rule found in 2 *Saund.* 388, *i*, recognized in 20 *John. R.* 489, above adverted to, it is supposed, with all due deference, a better reason would have been given for the decision than now appears.

If this view of the law of this case be correct, it necessarily results that the complainant is not entitled to a decree for specific performance, as it regards the eight lots specified in the principal agreement entered into on the 21st January, 1818; because the property in question at the time of the agreement belonged to the defendant. And though he agreed to purchase it, he did so in ignorance of his rights, and may now avail himself of the *locus penitentiæ.*

From the course of argument of the counsel for the complainant, it seems to be urged that although the premises in question at the time of the agreement were and now are the property of the defendant, still, that having agreed to purchase it as the property of the complainant, he is bound to proceed and pay for it, and thus buy his own property a second time. The proposition is so manifestly unjust and inequitable, that it is deemed unnecessary to submit any other answer than that the defendant entered into the agreement in ignorance of his rights, and that immediately upon ascertaining his rights, he refused to carry the contract into effect. The proceedings in partition, relied on by the complainant, shew that the portion of the estate which had belonged to Simon M. Veeder was described as belonging to an owner or owners unknown; and that at the very time of the partition,

the now defendant indulged the hope that when the law on the subject should come to be settled, the property in question would be adjudged to belong to him.

The question is submitted to the consideration of the chancellor, whether the limitation over to the survivors applies to the real estate devised to the sons, or whether it does not only apply to the bequest of the slaves made to the sons and daughter of the testator. The provision is, "in case one or more of my herein above named six sons, or my daughter, do or shall happen to die without lawful issue, &c. that the survivor or survivors of my said sons and daughter shall have what I have hereby given and devised him, her or them so dying." According to a literal construction of this clause, the daughter would take a portion of the real estate, in case of the death of either of her brothers, when it was manifestly the intention of the testator, from the preceding provisions of the will, that the real estate should go only to the sons, and that the daughter should have no portion of it. To apply this limitation, therefore, to the real estate, would not only defeat the intention of the testator, but operate unjustly. For on the death of one of the sons, the daughter would take a portion of the real estate; whereas on her decease the sons would take only a portion of the property bequeathed to them, in common with their sister. But if the limitation is confined to the bequest of the slaves, then it would operate equally. If this should be adopted as a sound construction of the will, the consequence is that there is no limitation over to the survivors, as it respects the real estate; and Simon of course was seised in fee of one sixth of the real estate devised to him and his brothers.

2. The complainant is not entitled to a decree for a specific performance, having failed to perform his part of the contract by not conveying the whole eight parcels, and having voluntarily disabled himself from so doing.

It cannot be required of a purchaser to accept a conveyance of part, when the part which was the principal inducement to the purchase cannot be conveyed.

3. The bill should be dismissed for want of necessary parties. The bill alleges that the defendant has sold several of

the lots, and received the consideration money. On the coming in of the answer, the complainant ought to have amended his bill and made those persons parties to the suit.

4. The bill should also be dismissed for multifariousness, it uniting separate and distinct matters, which ought not to have been joined.

In support of the proposition contended for by the defendant, that a man who has agreed to purchase his own property is not bound to perform his agreement, and that a court of equity will not compel him to perform it, if he repents of his bargain, I cite the case of *Bingham* v. *Bingham*, (1 *Ves.* 126,) where A., who had purchased an estate of B., which in fact was the estate of A., was allowed to have the purchase money refunded.     Here the defendant does not ask to have money refunded, but simply not to be compelled to perform a contract, improvidently made, to purchase his own property. The case from Vesey is cited as well in support of the above proposition, as in answer to the cases cited on the other side.

The attention of the chancellor is desired to the withdrawal of the replication, which obviates the points made by the complainant, that the facts set forth in the answer being denied, are not entitled to consideration, unless when admitted by the complainant.

THE CHANCELLOR.     It is unnecessary to consider the question whether this court would compel a party to perform a contract for the purchase of his own property, where there was no mistake as to the facts of the case, and the party had merely misunderstood his legal rights; as from an examination of the will of Myndert Veeder, I am satisfied there has been no mistake here, either in law or fact.     By that will the testator gave his real estate to his wife during her widowhood, with remainder to his six sons in fee.     Certain personal property was also given to his daughter.     The testator then adds:  " It is my will, and I do hereby order and direct, that in case one or more of my herein above named sons, or my daughter, do or shall happen to die without lawful issue of his or their bo-

dies, that the *survivor* or *survivors* of my said sons and daughter, as above said, shall then have what I have herein and hereby given or devised to him, her or them, so dying as aforesaid." Simon M. Veeder, one of the sons, died without issue. And if he took an estate tail under the will, it was turned into an estate in fee by the statute, which was passed before his death. In that case the defendant is probably the legal owner of the premises in question, through divers mesne conveyances from Simon. But if he only took a contingent or determinable fee, the premises belong to the complainant, as the representative of one of the surviving brothers.

The cases which arose upon the Eden will, decided in the supreme court and in the court for the correction of errors, have conclusively settled the point that the word *survivors* in this will refers the devise over to the contingency of Simon's dying without issue living at the time of his death ; and not to the event of an indefinite failure of issue. (16 *John. Rep.* 382. 20 *Id.* 483.) It is supposed, however, that the fact of the first limitation to the mother, and the supposed survivorship of Simon her son, turned this executory devise into an estate tail upon her death. And to support this position, the court is referred to a note in Saunders. (2 *Saund. Rep.* 388, *i, note* 9.) Sergeant Williams there says, " With regard to executory devises, it is a rule that wherever one limitation of a devise is taken to be executory, all subsequent limitations must likewise be so taken. However, it seems to be established that whenever the first limitation vests in possession, those that follow vest in interest at the same time, and cease to be executory, and become mere vested remainders, and subject to all the incidents of remainders." As I understand the case put by the learned annotator, it is directly the reverse of the one now under consideration. He is supposing a case in which the first limitation cannot vest as a valid remainder for want of a particular estate to support it ; but where the second limitation would be good as a remainder, provided the particular estate on which it rests could have vested absolutely at the death of the testator. And inasmuch as the owner of the particular estate can have no vested interest in possession during

the continuance of the contingent or determinable fee, he cannot, by any mode of alienation, bar the subsequent remainder which has not yet vested in interest. The second limitation over is, therefore, during the continuance of the contingent fee, only valid as supported by an executory devise. But as an executory devise prevents an alienation of the property until the contingency happens upon which the limitation is to take effect, it is a settled rule of law, that if a limitation over can be supported as a contingent remainder, it shall never be construed to be an executory devise. And in accordance with that principle, in the case supposed by Sergeant Williams, the moment the first limitation vests in possession by the happening of the contingency upon which it is to take effect, the second limitation, which in its nature is nothing but a contingent remainder, is changed from an executory devise into a remainder in fact; and may be barred in the same manner as if the first contingent estate had never existed. The principle, however, that the second limitation vests in interest, and ceases to be executory whenever the first executory limitation vests in possession, is confined to cases where the second or subsequent limitation can vest as a valid remainder, and therefore cannot be good as an executory devise ; or where the subsequent limitation in itself never could have been valid as an executory devise, being founded or dependant upon a contingency too remote. And it cannot be applied to a case where such succeeding limitation is in itself valid as an executory devise, but could not take effect as a remainder for want of a particular estate to support it.

Chief Justice Spencer does not advert to this distinction in the case of *Lyon* v. *Burtiss*, (20 *John. Rep.* 489;) nor was it necessary, as that case was rightly decided, upon the ground that the limitation over to the brother and sister of the testator was too remote, being after an indefinite failure of issue. I have looked into all the cases referred to by the chief justice in that case, in connection with the note of Sergeant Williams, and find them to have been cases in which the subsequent limitations were in themselves valid as remainders, or where they could not take effect as executory devises, on the ground that they would not vest during the existence of a life in being at

the death of the testator, or within twenty-one years after the determination of that life. (*Ca. Temp. Talb.* 232.) In the case of *Hopkins* v. *Hopkins,* (1 *West's Rep.* 615,) Lord Hardwicke says, " It is admitted on all hands, that if Samuel Hopkins had survived the testator, he would have taken an estate for life in the trust, in possession ; and that all the subsequent limitations intermediate between the devise to him and the devise to the now plaintiff, the first son of Hannah Dane, would have been contingent remainders." But as Samuel Hopkins died in the life of the testator, and the next limitation over could not therefore take effect as a contingent remainder, for the want of a particular estate to support it until the estate became vested by the birth of a second son of John Hopkins, that limitation was held good as an executory devise. The moment, however, that estate vested in the second son as an estate tail, all the subsequent limitations which were valid remainders, and supported on that estate, became vested in interest as contingent remainders, dependant upon the indefinite failure of the issue of such second son. And these limitations having once vested as valid remainders, upon a contingency which was too remote to support or sustain them as executory devises, they must have entirely failed upon the death of the second son, leaving no person in esse to take the estate under the will, had they not been preserved by the legal title which was vested in the trustees. The several limitations over, by the will of the testator in that case, were not successive executory devises, which certainly may be made by the same will, but they were originally so many parts of the same executory devise. And when a particular estate once vests in the first taker, the estate thus vested being capable of supporting the other parts as remainders, all the subsequent limitations must be considered and treated as remainders merely. (*See* 1 *West's Rep.* 617.)

The case under consideration, however, is entirely different from those to which I have referred. Here the first limitation over, to the sons, upon the death or marriage of the mother, was an estate in fee, subject to the contingency of their dying without issue at the time of their respective deaths. Being a conditional fee, the limitation over to the survivors on the happening of the contingency, was in itself a separate and distinct

executory devise, and could not be valid as a remainder. It is therefore immaterial whether the conditional fee vested in the sons by the first limitation was a remainder, or only an executory devise. Although the estate vested in Simon at the death of his mother, the subsequent limitation could not take effect as a remainder ; and it must of necessity remain an executory devise, depending upon the determination of the fee simple conditional by his death, without lawful issue then existing. The complainant had therefore the legal estate in the property at the time of the first contract, and he is entitled to a specific performance of that contract ; unless the conveyance of the small piece to McGown has discharged the defendant from his agreement. As to the lots acquired under the partition sales, I cannot see that there is any pretence for disputing the validity of the title. The piece conveyed to McGown was separate and distinct from the other lots embraced in the agreement, and the defendant admits he knew at the time of his purchase that the complainant had promised to convey it to McGown. I think, therefore, the consummation of the bargain with the latter affords no valid excuse to the defendant for refusing to complete his purchase of the residue. If he had been informed that the contract with McGown was in writing, so as to be legally binding upon the vendor, the defendant would now be entitled to receive the consideration money due from McGown at that time, and nothing more ; he paying for the same at the rate agreed upon in his own contract with Vedder. Under the circumstances, however, he is entitled to the consideration money received from McGown, with interest thereon, or he may elect to have an allowance made for that piece according to its relative value, as compared with the other lands contracted for at the same time.

There must be a decree for a specific performance of the several contracts as stated in the complainant's bill, with the exception of the piece of land conveyed to McGown. And it must be referred to a master, to take an account of what is due to the complainant for principal and interest ; making a proper deduction for the lot conveyed to McGown. The interest on the purchase money is to be computed from the time

of the complainant's offer to complete the purchase, so far as it respects the lots of which the defendant had not taken possession before that time, and as to the residue of the property from the time he took possession, after the contract with the complainant. The decree must also contain the consequential directions, upon the coming in and confirmation of the master's report, for the payment of the amount reported due, with the interest thereon, and for the conveyance of the property upon the receipt of such payment. And as the defendant appears to have been wholly in fault in this case, he must pay to the solicitor of the complainant his costs in this cause to be taxed.