## MRS. M. E. SMALLEY ET AL. v. FREEMAN PAINE ET AL.

### Decided June 29, 1910.

**1.—Trust—Sufficiency of Evidence.**

To engraft a parol trust upon the legal title to property the proof must be clear and satisfactory, and where there have been successive transfers, each link in the chain through which it is sought to establish the trust must be distinctly pointed out. Circumstances not clearly raising a presumption are insufficient.

**2.—Husband's Separate Property—Conveyance by Widow.**

Where the widow conveyed an undivided half interest in land, the separate estate of her deceased husband in which she inherited only a one-third interest for life, her deed passed only her own interest and the consideration received was her own property, not that of the heirs or of the estate.

**3.—Same—Trust—Mistake of Legal Rights.**

The widow of a decedent, being incorrectly advised that the consideration received by her for her conveyance of land which was the separate property

of her husband belonged to her daughter as his heir, stated that the land in which she invested such consideration and the various lands into which, by successive exchanges or sales and reinvestments such consideration was traced, were the property of such daughter, though title was taken in her own name, such declarations did not establish either an intent to make a gift of same to her daughter, or to hold the property in trust for her.

### 4.—Same—Resulting Trust—Ratification.

The heirs of land, the separate estate of the husband, acquired no interest by resulting trust in other lands in which the widow invested, in her own name, the proceeds of her unauthorized sale of their interest in the decedent's land. Their title was unaffected by her transfer. Nor did they, by ratification and deed of their interest as heirs to her vendee, acquire a right to such other lands in which she had invested the proceeds.

### 5.—Statute of Frauds—Wills.

A parol agreement by one holding the title to land that it should vest in the promisee after her death was void under the Statute of Frauds, and oral declarations of such owner to the same effect, testamentary in their nature, were in contravention of the Statute of Wills.

### 6.—Resulting Trust—Pleading.

Plaintiff declaring on an express trust by contract can not recover on proof of a resulting trust.

### 7.—Trust—Tracing Proceeds.

Evidence considered and held insufficient to trace the proceeds of an alleged trust fund through successive investments in various tracts of land to which the trust is sought to be successively attached.

### 8.—Findings of Fact—Statement of Facts.

Where the evidence brought up by statement of facts shows that no other judgment than the one rendered could have been proper, that judgment should be sustained, it being unnecessary in such case for appellee to attack by cross-assignments of error the findings of the trial court which, as appellant claims, require a different judgment.

### 9.—Evidence—Inventory of Estate.

The inventory and appraisement of an estate was admissible against the heirs. It was not necessary that it be approved by them.

### 10.—Evidence—Declarations of Decedent.

The husband, formally joined as a party to his wife's suit for recovery of her inherited separate property, can not testify to declarations made by a decedent (Rev. Stats., art. 2302).

Appeal from the District Court of Williamson County. Tried below before Hon. C. A. Wilcox.

The judgment appealed from was first reversed and rendered in part and affirmed in part, in an opinion by Mr. Justice Rice. The opinion following was rendered on rehearing, Justice Rice dissenting and adhering to his conclusion expressed in the original opinion. The decision of the majority having been approved by the refusal of a writ of error by the Supreme Court, only that opinion has been designated to be reported.

*W. K. Makemson* and *Nunn & Hudson*, for appellants.—It being the

belief of Mrs. Paine that she was taking the title in trust for the plaintiff, and it being the desire and intention of Mrs. Paine to take the title in trust for the plaintiff at the time of the purchase, the consent and ratification on the part of the plaintiff of such belief, desire and intent created an express trust. Henderson v. Rushing, 105 S. W., 840; Whitfield v. Diffie, 105 S. W., 324; Baylor v. Hopf, 81 Texas, 641; Craig v. Harless, 76 S. W., 595; Gardner v. Randall, 7 S. W., 78; Barnett v. Vincent, 7 S. W., 525; Yeager v. Neil, 64 S. W., 701; Lucia v. Adams, 82 S. W., 335; James v. Fulcrod, 5 Texas, 512.

*F. M. Newman, Cooper Sansom, Blaine & Howth, Wilcox & Graves,* and *F. D. Love,* for appellees.—If Mrs. Paine was mistaken as to her rights in the estate of her former husband, Moses Smalley, and believed that she had only a homestead in such estate, then she was not bound by any agreements made in reference thereto. 20 Am. & Eng. Enc. Law (2nd ed.), 818, 819.

An express trust is one made by express agreement and the desire and intention of Mrs. Paine that her property should go to appellant, M. E. Smalley, at her death, would not constitute a trust. Kelly v. Short, 75 S. W., 883.

A parol trust can only be established by clear and satisfactory testimony. Railway Co. v. Garrett, 52 Texas, 139; King v. Gilleland, 60 Texas, 274; Grooms v. Rusk, 27 Texas, 235; Agr. Assn. v. Brewster, 51 Texas, 263; Mead v. Randolph, 8 Texas, 191; Markham v. Caruthers, 47 Texas, 21; Focke v. Buchanan, 59 S. W., 820; Henslee v. Henslee, 24 S. W., 321; Railway Co. v. Dawson, 62 Texas, 262.

The law will not allow a party to a suit of this character to testify against the opposite party as to any transaction with, or statement by, a decedent, where the suit arises out of a transaction with such decedent, unless called to testify thereto by the opposite party. Sayles' Rev. Stat., art. 2302; Reddin v. Smith, 65 Texas, 27; Hicks v. Hicks, 26 S. W., 228.

The court did not err in finding that no resulting trust is shown in favor of plaintiff M. E. Smalley; because neither the pleadings nor the evidence of plaintiff will authorize such finding. Middlebrook v. Zapp, 73 Texas, 31.

OPINION ON MOTION FOR REHEARING.

KEY, CHIEF JUSTICE.—At a former day of this term this court reversed the judgment of the trial court, in so far as it affected appellant, Mrs. M. E. Smalley, and rendered judgment for her for the tract of land in controversy. The nature of the suit and the reason for the conclusion then reached are set out in the former opinion of this court. Appellees have presented a motion for rehearing, and, after careful consideration, a majority of the court have reached the conclusion that this court fell into error in its former decision and that the judgment of the trial court should be affirmed.

As shown by the former opinion, the decision of this court was based

solely upon the proposition that the trial court erred in failing to hold that there was an express trust engrafted upon the land in controversy in favor of appellant. The trial judge filed findings of fact and conclusions of law as follows:

"*Findings of fact.* 1. That Moses W. Smalley died intestate on the 6th day of August, 1857, leaving a surviving wife, Mrs. Louisa Maria Ellen Smalley, and a daughter, plaintiff, Mrs. M. E. Smalley, the daughter of said Moses Smalley and his said surviving wife.

"2. That at the time of his death the said Moses Smalley was possessed of 140 acres of land on the P. A. Holder survey in Williamson County, Texas, the same being his separate estate.

"3. That the facts with reference to the marriage and deaths of persons as set out in plaintiffs' petition are true.

"4. That on November 10th, 1868, Mrs. Louisa Maria Ellen Paine, formerly Smalley, joined by her husband, J. M. Paine, deeded and attempted to convey to Nelson Merrill, an undivided one-half interest in and to the above mentioned 140-acre tract of land, the said Mrs. Paine receiving in consideration of the execution of such deed, the sum of $700 from said Merrill.

"5. That on the same day, towit, the 10th day of November, 1868, the said Mrs. Louisa Maria Ellen Paine purchased from L. S. and Sarah M. Hanley a tract of land paying the sum of $500 therefor, and taking the conveyance in her own name. That the $500 paid by her for such tract was a portion of the $700 received by her in consideration of her conveyance to Merrill.

"6. That on said date, November 10th, 1868, the plaintiff Mrs. M. E. Smalley was a minor, fifteen or sixteen years of age, living with her mother, and on such date had no legally appointed guardian of her estate.

"7. That at the time of such conveyance to Merrill and purchase from Hanley, the said Mrs. Louisa Maria Ellen Paine believed that the $700 received by her in consideration of her deed to Merrill was the separate estate of Moses W. Smalley and believed that the lands purchased with such funds would be a part of the separate estate of said Moses W. Smalley, subject to a life estate in herself, and that at her death same would, under the law, revert to the plaintiff, Mrs. M. E. Smalley; and based upon such belief it was the intention and desire of the said Mrs. Louisa Maria Ellen Paine, on November 10th, 1868, and upon the dates of the subsequent purchases of tracts of land by her, as set out in plaintiffs' petition, and that such tracts of land should be occupied and used by her during her life, and that at her death, should revert to and become the property of plaintiffs, and that the plaintiff agreed to the subsequent sales of the respective tracts purchased by said Louisa Maria Ellen Paine.

"7. That each of the tracts of land purchased by the said Mrs. Louisa Maria Ellen Paine, as aforesaid, was continuously occupied by her as a homestead while she owned the same, and the last tract was so occupied

by her until about one year before her death, at which time she moved to the home of plaintiffs.

"8. That the money received by the said Mrs. Louisa Maria Ellen Paine from Merrill on November 10, 1868, as aforesaid, passed into and was the consideration used in the purchase of each of the subsequent tracts of land purchased by her as set out in plaintiff's petition.

"9. That on the 15th day of September, 1869, the plaintiff, M. E. Smalley, was married to F. J. Smalley. That on December 29, 1869, the said plaintiffs executed and delivered to Nelson Merrill their deed conveying to said Merrill an undivided one-half interest in said 140 acres of land in consideration of $700 paid the plaintiffs, and for further consideration and purpose of ratifying and confirming the deed made by Mrs. Louisa Maria Ellen Paine on November 10, 1868. That at the time of executing said deed, plaintiffs had knowledge of the facts herein above set out surrounding the execution of the deed by Mrs. Louisa Maria Ellen Paine to Merrill in 1868, and of her purchase from Hanley and had knowledge of her belief, intention and desire that the property purchased from Hanley would become the property of plaintiffs upon the death of the said Louisa Maria Ellen, and plaintiffs believed such to be the fact. Freeman Smalley testified that the consideration of the deed executed by himself and wife was 'in part the ratification of an agreement theretofore made.'

"10. That the said Mrs. Louisa Maria Ellen Shannon, at the time of her death, owned the tract of land set out and described in plaintiffs' petition and left surviving her, as sole heirs, the plaintiff Mrs. M. E. Smalley, and the defendants, Mrs. Kizzie Renvekamp, John Paine, Freeman Paine and Mrs. Dean Green. That the plaintiff has collected and has in his possession the net sum of $199.34 as rents for said tract of land for the year 1906, and that the rents for the year 1907 are uncollected and the amount not ascertained.

"*Conclusions of law.* 1. That the deed from Mrs. Louisa Maria Ellen Paine, dated November 10, 1868, to Merrill, wherein the said Mrs. Paine attempted to convey to Merrill an undivided one-half interest in 140 acres of land, the separate property of Moses W. Smalley, conveyed no title to said Merrill, except the life estate therein of the said Mrs. Smalley.

"2. That the $700 received by the said Mrs. Paine as the consideration for said deed, was the separate estate of the said Mrs. Paine.

"3. That the various tracts of land purchased by the said Mrs. Paine, afterwards Mrs. Shannon, including the tract left by her at her death and described in plaintiffs' petition, were the separate estate of the said Mrs. Paine, afterwards Shannon.

"4. That the facts are not such as would raise a resulting or implied trust in said land in behalf of plaintiff, and that the evidence is insufficient to show an express trust in said land in favor of plaintiff.

"5. That the plaintiff should have and recover an undivided one-fifth interest in said land and rents and that each of the defendants

Mrs. Kizzie Renvekamp, John Paine, Freeman Paine and Mrs. Dean Green are entitled to an undivided one-fifth interest in said land and rents, and that the interveners and other defendants take nothing in this cause.

"Judgment accordingly."

A statement of facts has been brought up as part of the record, and we copy therefrom as follows, showing the documentary evidence:

"The records were introduced by the plaintiffs as follows:

"1.   Deed from Freeman Smalley to Moses W. Smalley, dated February 10, 1854, conveying in consideration of $1, the receipt of which is acknowledged, 100 acres of the P. A. Holder survey.

"2.   Deed from Freeman Smalley and wife to M. W. Smalley, dated March 21, 1857, consideration of $140 paid, conveys 40 acres of the P. A. Holder survey in Williamson County, Texas.

"3.   Deed from J. S. Handy and wife to Louisa E. Paine, dated November 10, 1868, in consideration of $500 paid, conveys 70 acres of the Dillard survey.

"4.   Deed from J. M. Paine and wife, Louisa E. Paine, to James Adams, dated February 10, 1872, in consideration of $500, conveys 100 acres of the Dillard survey.

"5.   Deed from James Adams and wife to Louisa E. Paine, dated February 10, 1872, in consideration of $500, conveys 109 acres of the Damen survey.

"6.   Deed from J. M. Paine and wife, Louisa E. Paine, to Catherine Pugh, dated February 13, 1872, in consideration of $1000 paid, conveys 188 acres of the Dameron survey.

"7.   Deed from A. G. Randall to Louisa E. Paine, dated February 15, 1872, in consideration of $800 paid, conveys 100 acres of the Damen survey.

"8.   Deed from Maria Ellen Shannon to W. P. Buttery, dated January 13, 1879, in consideration of $800 paid, conveys 100 acres of the Damen survey.

"9.   Deed from W. P. Buttery to Maria Ellen Shannon, dated January 13, 1879, in consideration of a valuable consideration, conveys 160 acres out of the Comal Charot survey, and 7 acres out of the Wells survey in Travis County, Texas.

"10.   Deed from W. P. Buttery and wife to Maria Ellen Shannon, dated January 13, 1879, in consideration of $800 paid, conveys 313 acres of the Wells survey in Travis County, Texas.

"11.   Deed from D. C. Shannon and Maria Ellen Shannon to M. L. Hallenbeck, dated November 9, 1886, in consideration of $1500 and other valuable considerations, conveys 480 acres of the Charot and Wells surveys in Travis County, Texas.

"12.   Deed from M. L. Hallenbeck to Maria Ellen Shannon, dated November 9, 1886, in consideration of $600 cash, conveys 147 acres out of the Winslow Turner survey.

"13.   Deed from J. M. Paine and wife, Louisa Ellen Paine, to Nel-

son Merrill, dated November 10, 1868, in consideration of $700 paid, conveys an undivided one-half interest in 140 acres out of the P. A. Holder survey.

"The field notes to the first and second tracts of land herein mentioned are as follows:

"1st tract. All that certain tract of land lying along Brushy Creek, in Williamson County, Texas, a part of the P. A. Holder survey, beginning on the north boundary line of Brushy Creek, thence north 2520 vrs. to a stone mound in the north boundary line of the P. A. Holder league; thence east 224 vrs.; thence south 2520 vrs. to the north bank of Brushy Creek; thence west 224 vrs. to beginning.

"2d tract. Beginning at a stone mound on the north bank of Brushy Creek, and being the southeast corner of the tract of land heretofore conveyed by me, Freeman Smalley, to the said Moses W. Smalley; thence north 1900 vrs.; thence east 118⅔ vrs.; thence south 1900 vrs. to a stone mound on the bank of Brushy Creek; thence up Brushy Creek with its meanders to the beginning."

Defendants introduced in evidence the following deeds and court records, towit:

"1. Deed from F. J. Smalley and wife M. E. Smalley, to Nelson Merrill, dated December 29, 1869, for all interest of grantor M. E. Smalley as heir of Moses Smalley in 140 acres of land on the P. A. Holder survey in Williamson County, Texas, the consideration for said deed being $700 paid.

"2. Deed from Nelson Merrill, guardian of the estate of Elizabeth Smalley (now plaintiff, Mrs. M. E. Smalley), to Joel Houghton, dated February 2, 1869, and conveying an undivided one-half interest in 140 acres of land out of the P. A. Holder survey in Williamson County, Texas, the consideration being $700 paid.

"3. Deed from Ellen Shannon and D. C. Shannon to Mark Shannon, dated June 15, 1878, conveying 100 acres out of the Damen survey in Williamson County, in consideration of $2000 paid.

"4. Deed from Mark B. Shannon to Maria Ellen Shannon, dated September 20, 1878, conveying 100 acres out of the Damen survey in Williamson County, Texas, in consideration of $800 paid.

"5. The inventory and appraisement of the estate belonging to Elizabeth Smalley, a minor (now plaintiff, Mrs. M. E. Smalley), dated January 4, 1869, showing that the estate of Elizabeth Smalley consisted of 70 acres of land, undivided one-half of a tract of 140 acres formerly belonging to Moses Smalley estate, lying in the county of Williamson on Brushy Creek and part of the Holder league, and which is valued by us, the appraisers, at the sum of $6 per acre, making the amount of $420."

The other testimony in the case is substantially as follows: Martin Lackey, a witness for the plaintiff, testified that he knew Moses Smalley; first got acquainted with him about 1851; that he was then unmarried and lived about a mile below Round Rock on Brushy Creek in Williamson

County; that he rented his place to the witness's father in 1851, which place was located between the Wash Anderson tract of land and old man Smalley's house.

Daniel Stone, a witness for the plaintiff, testified that he did not know Moses Smalley, but knew his surviving wife after she married Paine. Got acquainted with her in 1870; knew her while she lived on the Hale place; that she often came to his house, and stated to him a number of times that the place on which she was then living, the Hale place, also called the Hanley place, was purchased by her with money she received from the Moses Smalley estate, and that when she died, it would go to Lizzie, who is the plaintiff in this case. He stated that she also used practically the same language in regard to the several places which she afterward purchased or traded for, including the land in controversy. Said he visited her several times after. she moved onto the land in controversy, and on several occasions she told him that when she passed away, the plaintiff would have that place as a home. Said she told him that she traded the Buttery place for the land in controversy in this suit. On cross-examination he stated that Mrs. Paine, afterwards Mrs. Shannon, always said that the place was her own property, but would go to Lizzie when she died.

Green Adams, witness for the plaintiffs, testified that he knew Moses Smalley; knew where he lived from 1854 until he died in 1857; that his house was west of his father's house and about 250 yards east of Wash Anderson's boundary line. Said when he first knew Moses Smalley he had consumption, and was not able to do any work up to the time of his death; that the only work he knew of him doing was running a peddling wagon, and that he accumulated no property that the witness knew of, during the time of his marriage.

G. B. Stephens, a witness for the plaintiffs, testified that he knew Mrs. Shannon, the plaintiff's mother, for several years before her death; that a short time before her death, while she was living on the land in controversy, she told the witness that it rightfully belonged to Lizzie Smalley, the plaintiff, and would go to her when she, Mrs. Shannon, died, but that if Freeman Smalley, the plaintiff's husband, sued anyone for the land upon the Colorado River she would squander the place she was then living on.

Sam C. Snider testified for the plaintiffs that he knew Moses Smalley during his life time; that he died about 1857 or 1858; that he had 140 acres of land when he married; that his father gave him 100 acres and he worked for his father for the other 40 acres; that he also had at the time of his marriage some horses and cattle, the number of which the witness did not know; that he knew Joe Paine, who afterwards married Moses Smalley's widow; that at the time of the marriage referred to Joe Paine had no property except one horse, and acquired none after that time that the witness knew of. Said he knew that Moses Smalley had a house on the 140-acre tract of land, and was cultivating it and

claiming it before his marriage in 1852; that he died about four years thereafter, and left one child named Lizzie and his wife as his heirs.

R. W. Eller testified that he knew Moses W. Smalley before his marriage; that at the time of his marriage he had about 100 acres of land that his father had given him, and 40 or 50 acres that he had worked for his father for, and also had a right smart bunch of cattle and horses; that his wife did not have any property at all; that after his widow married Joe Paine they sold the Smalley tract and bought another up Brushy, above Round Rock, and then traded it for another tract. He testified that Joe Paine had no property that he knew of, either before or after his marriage; that the only child of Moses Smalley was Lizzie Smalley, who married F. J. Smalley. On cross-examination he said that Moses Smalley was occupying and claiming 140 acres of land sometime before he was married, but that he did not know when it was deeded to him.

Mary Champion, a witness for the plaintiffs, testified that she knew Mrs. Shannon, the plaintiff's mother; got acquainted with her in 1869 when she was Mrs. Paine; said she had heard her say several times that she had got her property from Moses W. Smalley; said she was intimate with her and heard her speak of it often; that when she first knew her she owned the Adams place which she exchanged for the place where Ely Stewart now lives. She also said that she knew Joseph M. Paine, and that he had no property that she knew of, and that she had frequently heard his wife say that he had no property. On cross-examination she said that she could not repeat the exact language used by Mrs. Shannon, but that she heard her make the statement a number of times between 1869 and 1873, that she got her property from her first husband Moses W. Smalley.

Ancill Stearnes testified that he knew Moses W. Smalley and was with him when he died; that he owned 140 acres of land at the time of his marriage and about 25 or 30 head of cattle and 8 or 9 head of horses. Said his father gave him 100 acres of land and he worked for his father for 40 acres; said he knew Mrs. Shannon, saw her about two years before she died and asked her if she had rented a place, and she said, "No, I have a place of my own; no, not my own, but it is Lizzie's at my death, but I do not intend she shall have it as long as I can help it." Said he went to see her about five or six times thereafter for the purpose of renting her place, and she told him that he would have to see Lizzie and Freeman Smalley; that she wanted them to be satisfied as the place (the tract of land in controversy) belonged to Lizzie Smalley. He also testified that Joe Paine had only one horse when he married, and that he knew of him acquiring no property after his marriage. On cross-examination he said that he did not know when Moses Smalley got title to the 140 acres of land, but that he was in possession of it in 1851.

M. L. Hallenbeck testified for the plaintiffs that he once owned the tract of land in controversy in this suit; that he sold it to Mrs. Maria Louisa Ellen Shannon, and received in payment therefor 480 acres of

land in the Horseshoe Bend on the Colorado river in Travis County, Texas; said he exchanged one for the other.

Hon. W. K. Makemson, an attorney for the plaintiffs, testified that he knew the Smalley family quite well; that he knew Moses Smalley before he married when he lived near his father on a tract of land which he claimed; that the witness lived near them and saw them quite often. That before his marriage Moses Smalley did some work in improving his own and his father's places; that he remembered seeing him do some work on a mill-race for his father before his marriage; that after his marriage he ran a peddler's wagon for a while, during which time his health was bad, and that that was the only work the witness knew of him doing after his marriage. Said he knew Mrs. Shannon, formerly Mrs. Paine, during her life time; and that he saw her in Georgetown in the clerk's office in the latter part of the year 1868; that he was then a young lawyer and went into the clerk's office on some business, the nature of which he could not recollect, though he thought it was to see about a bill of sale; said that when he went in a number of persons were in the room, and he remembered among them were Judge Harris, Nelson Merrill, Dr. Knight, Joel Houghton, Mrs. Paine, afterwards Mrs. Shannon, and her daughter Lizzie Smalley, now Mrs. M. E. Smalley, who was then a child about 15 years old. The witness then said: "My recollection is that Dr. Knight was talking to Mrs. Paine when I went in, and I heard him tell her, 'Ellen, the only right you have in this land is a homestead right, and if you sell it you can invest the money in another homestead, which is yours as long as you live, but when you die it goes to Lizzie'; to which Mrs. Paine replied: 'Yes, I know that, and that is exactly what I want and intend to do.'" Cross-examination: "The parties I mentioned were in the county clerk's office when I went in, and I had no interest whatever in the matter they were discussing. I was not connected with the matter and simply overheard the conversation which I have mentioned as a casual listener or spectator while I was looking after or attending to the business upon which I went to the county clerk's office."

Sam Purcell, a witness for the plaintiffs, testified that he knew where Moses Smalley's house stood, which was about 300 yards from Wash Anderson's line, and nearer his father's house than the Anderson line.

Curtis Brizenbine, a witness for the plaintiffs, testified that he knew Mrs. Shannon quite well for several years before she died; that she traded at his father's store where he worked, and she talked with him a number of times; said she stated to him more than once that what she had would go to Lizzie when she died, but that she was going to keep her out of it as long as she could.

Freeman Smalley, the plaintiff's husband, who joined formally in the suit, testified that they were married in December, 1869, and that his wife was then 16 years of age; that after their marriage they executed a deed to an undivided one-half interest in the tract of 140 acres of land, known as the Moses Smalley place, to Nelson Merrill. He said:

"We executed that deed in part consideration of carrying out a previous agreement between Mrs. Maria Louisa Ellen Shannon, then Mrs. Paine, Nelson Merrill and my wife in regard to said land, said agreement being part of the consideration for said conveyance. Myself and wife agreed and consented that my wife's mother, then Mrs. Paine, and afterwards Mrs. Shannon, could sell the place she bought with the proceeds of the Moses Smalley land, and put same into another home, and that each time thereafter when she sold her homestead and bought another one, or exchanged one for another, my wife and myself consented to such transactions."

Cul Smalley, a witness for the plaintiffs, testified that he was the plaintiff's son; that about a year before his grandmother died he was at her house working for her, and she began talking about the place on which she was then living, and told the witness that it belonged to Lizzie and would go to her when she, the grandmother, died.

It is a well settled doctrine of equity that, in order to engraft a parol trust upon the legal title to property, the proof must be clear and satisfactory; and, although our Supreme Court has held that the rule referred to should not be embodied in a charge to a jury, it has applied and enforced the rule in dealing with facts, and in King v. Gilleland, 60 Texas, 274, Mr. Chief Justice Willie said:

"Perhaps there is no fact which, in the trial of civil causes, is required to be so satisfactorily proved as that which engrafts a parol trust upon the legal title. 1 Perry on Trusts, sec. 136, and authorities just cited.

"Whilst it is not necessary that it should be established beyond a reasonable doubt, nothing must be left to conjecture, nor must presumptions be indulged which are not the usual and almost necessary deductions from the facts proved.

"After a great length of time has elapsed, and parties have held possession of the land for years under the legal title without question, and the witnesses who might have established their right to such possession beyond all controversy are dead, they should not be readily disturbed by evidence within the knowledge of living witnesses which raises a presumption in favor of the trust, when if deceased witnesses could be heard to speak, such presumption might be easily rebutted."

And in Torrey v. Cameron, 73 Texas, 591, the present Chief Justice said: "We do not doubt that the trust property or fund must be clearly traced—that is to say, where there have been successive transfers, each link in the chain of transfers through which it is sought to establish the trust must be distinctly pointed out. It is not sufficient by proof of circumstances to raise a strong presumption that in some way, not clearly shown, the wife's separate estate has passed into the property in which the trust is sought to be established."

In the case at bar Mrs. Smalley, the plaintiff, seeks to recover, not the tract of land which belonged to her father at the time of his death, but a tract of land which was long afterwards acquired by her mother.

Her title to the latter tract as an heir of her deceased mother was recognized, and her interest as such awarded to her by the judgment appealed from; and if she is not entitled to recover the whole of the land, but only a portion of it, she does not contend that the proof shows that she was entitled to recover a larger proportion than the amount awarded to her. Her claim of title to the entire tract is founded upon the contention that her mother had only a life estate in the property which was used to pay Hallenbeck for the land in controversy, and that the remaining title was in her. Do the facts found by the trial court, or shown by the testimony, establish that contention with the degree of certainty required by the law? If they do, her case is made out and she is entitled to recover the entire tract; but if they do not, then she is not entitled to recover, and the judgment should be affirmed.

In order to trace and establish her title to the Buttery lands which she alleges were used by her mother in paying for the land in controversy, she alleged, and the trial court found, that the 140 acres which was deeded to her father, Moses W. Smalley, after his marriage to her mother, was his separate property. She then alleges that after the death of her father her mother sold to Merrill an undivided half interest in the 140-acre tract referred to, for consideration of $700; and, on the same day, used $500 of that money in purchasing another tract of land from the Hanleys. She does not allege in her petition or show by proof, that before purchasing the Hanley land her mother made a gift to her of the $700, or any portion thereof, received from Merrill. Nor does she allege or prove that before purchasing the Hanley tract her mother, believing that the money was her own, and intending to dispose of it for the benefit of the plaintiff, did what was necessary to constitute a voluntary trust. In reference to the money received by the plaintiff's mother from Merrill, the most that can be said in the plaintiff's favor is embodied in the trial judge's seventh finding of fact; and that is, that the plaintiff's mother believed that the money referred to was the separate property of the estate of the plaintiff's father. But, as a matter of fact, and doubtless because of a misapprehension of the law, she was mistaken; and the money referred to, as soon as it was received from Merrill, became the property of the plaintiff's mother. That question, upon a very similar state of facts, was decided by this court in Arnold v. Ellis, 20 Texas Civ. App., 262, 48 S. W., 883, and the Supreme Court refused a writ of error in that case. As bearing upon the question of ownership of the money, as well as the questions of ratification and the statute of frauds, we quote as follows from the opinion in that case:

"The plaintiffs' title rests upon the erroneous theory that the money used by A. McKenzie in paying for the property in controversy belonged to them; but such was not the case. If it be conceded that the entire consideration paid by McKenzie for the lot was the proceeds of the sale of the Hobson land to Woodward, still, it was not the plaintiffs' money, and they had no interest in it. Although McKenzie was their father, he had no authority whatever to sell their land, and when he

undertook to do so, the instrument executed by him and the receipt by him of the purchase money from Woodward, did not in the slightest degree affect their title to the land, and they acquired no interest whatever in the consideration received by McKenzie. Therefore, as the consideration paid by McKenzie for the lot in controversy belonged to him, and not to the plaintiffs, there was no resulting trust in their favor; and, so far as they are concerned, McKenzie acquired both the legal and equitable title to the lot. Nor is the plaintiffs' case benefited by their alleged ratification of their father's act in contracting their land to Woodward. Leaving out of consideration the facts that the bond for title does not purport to have been executed by A. McKenzie as their agent or guardian, and that they were both minors of tender age, it is clear from the testimony that they did nothing in ratification of the transaction referred to until long after McKenzie acquired title to the Temple lot. They both testified they were not apprised of their father's attempt to sell their land on the Hobson survey until 1892; and he bought the Temple lot in 1887.

"Therefore, not having ratified his sale of their land to Woodward while he held and owned the money received from Woodward, and not having done so, if at all, until after he acquired title to the Temple lot, no resulting trust in the lot arises in their favor.

"The subsequent agreement between McKenzie and the plaintiffs, that they should have the property in controversy in lieu of the Hobson land, not being in writing, is in contravention of the statute of frauds, and therefore void. The following authorities cited in appellants' brief are more or less in point in support of the views we have announced: Evans v. Opperman, 76 Texas, 298; Parker v. Coop, 60 Texas, 118; Lacey v. Clements, 36 Texas, 663; Torrey v. Cameron, 73 Texas, 588; Williams v. County of San Saba, 59 Texas, 442; Oury v. Saunders, 77 Texas, 278; Toole v. Dibbrell, 29 S. W., 387; Beach Eq. Jur., secs. 215, 217, 219; Pom. Eq. Jur., sec. 1037; Beach on Trusts and Trustees, secs. 150, 151, 175; Bispham Prin. of Eq., secs. 79-83; Perry on Trusts, sec. 133; Hadley v. Stewart, 62 Iowa, 267, 17 N. W., 500; Bottsford v. Burr, 2 Johns. Ch., 405; Cutler v. Tuttle, 19 N. J. Eq., 562; Tunnard v. Littell, 23 N. J. Eq., 267; Rogers v. Murray, 3 Paige, 290."

If the plaintiff had no interest in the money received by her mother from Merrill, then the mere fact that her mother had been improperly advised, as disclosed by the testimony of Judge Makemson, and on account of such erroneous advice believed that the money referred to was not her own, but belonged to the plaintiff, such erroneous belief did not vest title to the money in the plaintiff. The mistake referred to may satisfactorily account for the subsequent declarations of the plaintiff's mother to the effect that the several tracts of land thereafter purchased by her were paid for with property belonging to her first husband's estate, and therefore would belong to the plaintiff after her mother's death; but it did not have the effect of transferring title or creating a trust. It would be a strange doctrine to hold that when an actual owner

of property, on account of an erroneous view of the law, acts upon the belief that the property belongs to another, such acts, when not amounting to an estoppel, should have the effect of divesting title out of such owner. It is contended on behalf of appellant that the proof shows that before the Hanley land was purchased a contract was entered into between the plaintiff and her mother, by which the money used in paying for the Hanley land became the plaintiff's money, or was impressed with a trust in her favor. The trial court failed to find, and the evidence failed to show, the existence of any such contract. If it be conceded that some circumstances were shown tending to indicate some sort of previous understanding, the circumstances referred to do not meet the requirement that a parol trust must be established by evidence which is certain and satisfactory. As a matter of fact, the record indicates that the plaintiff's mother had in her possession the money received from Merrill not longer than a few hours, because she acquired title to the Hanley land the same day that she sold the Smalley tract. At that time the plaintiff was a child, not over 16 years of age; and while it is quite probable that she would have consented to any business proposition that her mother might have submitted to her, no witness testified that anything of that nature occurred between them during the time her mother was in possession of the money received from Merrill and the circumstances relied on do not necessarily lead to that conclusion. This being the case, we think it must be held, as was done by the court below, that the money used by the plaintiff's mother in paying for the Hanley tract of land did not belong to the plaintiff, but was the sole property of her mother.

If after the plaintiff's mother acquired title to the Hanley tract a parol agreement was entered into, by which, upon the death of the plaintiff's mother, title to that tract was to vest in the plaintiff, such agreement was in contravention of the statute of frauds as was held in Arnold v. Ellis, supra, and conferred no right. If there was no such agreement, and the plaintiff's mother undertook, by oral declarations, testamentary in their nature, to give the property to the plaintiff after her death, then such declarations were in contravention of the statute of wills, if not of the statute of conveyances, and conferred no right. As before said, the various statements and declarations of the plaintiff's mother, to the effect that the different tracts of land acquired by her were purchased with property belonging to the estate of Moses W. Smalley, can be accounted for upon the theory of a mistake of law—a failure to understand and appreciate her legal rights. That mistake is not a matter of conjecture, but is established by testimony furnished by the plaintiff and coming from the lips of Judge Makemson, one of her attorneys. His testimony shows that, at the very inception of the transactions involved in this case, the plaintiff's mother was advised that the only right she had in the 140 acres of land deeded to her former husband Moses W. Smalley during their coverture, was a homestead right,

and that if she sold that tract of land she could invest the proceeds in another homestead, which would be hers as long as she lived, and would then go to her daughter, the plaintiff in this case; to which the witness testified she replied: "Yes, I know that and that is exactly what I want and intend to do." That answer indicated that the plaintiff's mother had previously been given the same character of advice, and was then under the belief that her legal rights were as stated by Dr. Knight. That advice was incorrect and unsound for more than one reason, even assuming that the Smalley land was the separate estate of her husband. In the first place, if such was the condition of the title, then she owned a life estate in one-third of the land, and could sell that interest and do whatever she pleased with the consideration received therefor. Furthermore, as held in Arnold v. Ellis, supra, not being the guardian of the estate of her minor child, any attempt by her to convey the land could not affect the rights of the child; and therefore any consideration the mother might receive for so doing would belong solely to the latter, and the child would have no interest in it.

The testimony affirmatively shows that the plaintiff's mother was radically misinformed as to her legal rights, and was led to believe that the money, which belonged absolutely to her, was property of the estate of her former husband, and held by her in trust for the benefit of the plaintiff. It was not shown that that mistake was ever corrected; and, no doubt, it continued in the mind of the plaintiff's mother up to the time of her death; and, as said before, it furnishes a satisfactory reason why she made the subsequent statements and declarations relied on by the plaintiff as supporting her claim to the land in controversy. The plaintiff alleged in her petition, in substance, that a contract was entered into between the plaintiff and her mother, by which the latter expressly agreed to invest the $700 received from Merrill in trust for the plaintiff, and that she, the plaintiff, and her husband, in consideration of such agreement, and the further consideration of $700 paid by Merrill, executed and delivered to Merrill their deed of date December 29, 1869. The trial court failed to find, and the testimony fails to show, that such contract and agreement was entered into between the plaintiff and her mother; and therefore it would seem that the plaintiff's case has failed at its fountainhead, and the judgment against her should be affirmed. In other words, according to the averments of her petition, her title to the money received by her mother from Merrill, and her right to the property thereafter purchased with that money, is founded upon an express and not an implied contract; and such express contract, not being shown with that degree of certainty required by law, the plaintiff has failed to establish her case.

It is true, that if the land in controversy was paid for with property rightfully belonging to the plaintiff, a resulting trust would arise in her favor, but that proposition does not change the fact that she bases her right to the consideration used in paying for the land upon an express trust; and, having so pleaded her title, she is not entitled to recover upon

proof of a different title. However, we agree with the trial court that the plaintiff failed to show title to the property in controversy by proof of either an express or implied trust.

Thus far the case has been considered mainly upon the findings of the trial court, assuming that the findings of fact were supported by testimony. However, keeping in mind the rule announced by authorities heretofore cited, we doubt if some of the findings which are in behalf of the plaintiff find sufficient support in the testimony. And if it was the intention of the trial court to find that the entire consideration paid by the plaintiff's mother for the tract of land in controversy was derived from the money received by her from Merrill for the sale of the Moses Smalley land, we feel compelled to hold that such finding is not supported by testimony.

The undisputed proof shows that the plaintiff's mother bought 70 acres of land from Hanley and wife December 10, 1868, paying therefor $500; that on February 10, 1872, she exchanged lands with James Adams and wife, by which she acquired title to 109 acres of land on the Damen survey; that on February 13, 1872, she sold and conveyed to Catherine Pugh 188 acres on the Dameron survey. If it be conceded that the Dameron and Damen are one and the same survey of land, still, the proof shows that on the 13th day of February, 1872, the plaintiff's mother conveyed to Catherine Pugh 188 acres of land, and it fails to show how she acquired title to 79 acres thereof. The plaintiff alleged in her petition her mother's acquisition of one tract of land from Adams, and that on the 15th of February, 1872, she sold the Adams tract to Catherine Pugh for the sum of $1000, and invested $800 of that sum in the tract of 100 acres bought from A. G. Randall. Hence it appears from the statement of facts that the plaintiff's mother sold to Catherine Pugh for the consideration of $1000, 188 acres of land on the Dameron survey; and it does not appear, as alleged in the plaintiff's petition, that the land so conveyed to Catherine Pugh was the land acquired three days before from James Adams and wife. On the contrary, the Adams land was on the Damen survey. It consisted of 109 acres, valued at $500, while the land conveyed to Catherine Pugh is described as upon a different survey, was sold for the consideration of $1000, and consisted of 79 acres more than the Adams tract. If it be conceded that it included the Adams tract, the sale was made only three days after Mrs. Paine acquired the Adams tract, valued at $500, and she sold to Catherine Pugh 79 acres more than the Adams tract and received therefor $1000. The record does not show how Mrs. Paine acquired title to the 79 acres, but that is not material in this case. The record does show that she sold the 79 acres to Catherine Pugh, and the plaintiff alleges that she used part of the $1000 received from Catherine Pugh to pay for the Randall tract. If the 109 acres which Mrs. Paine purchased from Adams and wife on February 10, 1872, was worth only $500, the consideration stated, it is not probable that it was worth any more than that three days afterwards, when she made the sale of 188 acres to Cath-

erine Pugh for $1000, which indicates that the 79 acres of land, which was no part of the Adams tract, was worth $500. The plaintiff alleged in her petition that $800 of the money received by her mother from the sale to Catherine Pugh was used in the purchase of the 100 acres of land thereafter bought from A. G. Randall; and it devolved upon her to show, as she alleged, that the entire $800 referred to was proceeds of the sale of the Adams tract; and having failed to do that, she has failed to trace the alleged trust fund in the manner alleged in her petition.

Futhermore, the plaintiff alleged in her petition that her mother traded the Randall tract to W. P. Buttery for two tracts of land, aggregating 480 acres, and that thereafter she traded the two Buttery tracts to Hallenbeck for the land in controversy. The statement of facts shows that on January 13, 1879, the plaintiff's mother deeded to W. P. Buttery 100 acres of land, part of the Damen survey, for a consideration of $800, and that on the same day W. P. Buttery executed two deeds to the plaintiff's mother, one conveying 313 acres for a consideration of $800, and the other, for a valuable but undisclosed consideration, conveying 160 acres of land. Thus it appears from the statement of facts that the 313 acres of land obtained from Buttery was equal in value to the Randall tract, which the plaintiff's mother conveyed to him; but, notwithstanding that fact, Buttery conveyed to the plaintiff's mother another tract of 160 acres, for which it is reasonable to suppose that he received some other and additional consideration. How much that was the proof fails to show, but it does show that the 160 acres referred to was used by the plaintiff's mother as part of the consideration for the land involved in this suit. The plaintiff alleged in her petition that the trust fund alleged to have been invested by her mother in the Hanley land passed on down and became the entire consideration paid by her mother for the Hallenbeck land, the tract now in controversy, and the proof submitted failed to sustain that allegation.

It is true that, when one person has furnished part of the consideration paid for land, title to which is taken in the name of another, such person, by showing the proportional amount of the consideration that was furnished by him, may recover a like proportion of the land. But in this case the proof was not sufficient to enable the court to determine what proportion of the Buttery land was paid for with the Randall tract, because there is no proof of the relative value of the two Buttery tracts, nor of the amount of consideration that was paid to Buttery for the 160-acre tract. Besides, the question of the plaintiff's right to a *pro tanto* recovery is not presented in her brief.

In looking to the statement of facts and reaching conclusions which may be in conflict with findings of the trial court, we have not overlooked the fact that the findings referred to have not been assigned as error. As we understand the rules of practice, when a trial judge has filed conclusions of fact and a statement of facts has also been brought up, if the undisputed testimony shows that the proper judgment was

rendered, the successful party is entitled to have that judgment affirmed, without assigning error upon the judge's findings of fact when they are not supported by but are contrary to the undisputed testimony. In other words, when the trial court has rendered the only judgment which properly could have been rendered upon the testimony submitted, the appellee is entitled to have that judgment affirmed, no matter what findings of fact and conclusions of law the trial judge may have filed. In this State there is no law or rule of practice which requires an appellee or defendant in error to appear or be represented in the appellate court; and if, upon the undisputed facts, the proper judgment has been rendered, it is the duty of the appellate court to affirm such judgment, unless the appealing litigant has made it appear that material error was committed during the trial of the case.

With these remarks, we pass from the controlling question in the case, and will briefly notice some of the other points presented in appellant's brief.

Under the assignment of error which complains of the action of the court in permitting the defendants to introduce in evidence the inventory and appraisement of the plaintiff's estate while she was a minor, appellants submit but one proposition, which is, that the document referred to was not admissible, because it was not executed, authorized or approved by the plaintiff. The reason urged is untenable. The admissibility in evidence of proceedings in the probate court concerning the estate of a minor, does not depend upon the approval or consent of such minor.

Error is also assigned upon the action of the court in not allowing the plaintiff F. J. Smalley to testify as to declarations made by the plaintiff's mother at the time she received the $700 from Merrill. The testimony referred to comes within the purview of art. 2302, R. S., and was properly excluded (Reddin v. Smith, 65 Texas, 27; Hicks v. Hicks, 26 S. W., 228).

Upon the whole case our conclusion is that the trial court committed no error, and therefore its judgment will be affirmed.

Rehearing granted and judgment affirmed.

*Affirmed.*

Writ of error refused.