### COUCH v. SPARGER et al. (No. 6942.)

(Court of Civil Appeals of Texas. San Antonio. May 2, 1923. Rehearing Denied May 30, 1923.)

1. **Descent and distribution ⬅➡90(4)—Burden of proof on plaintiff to show that land was purchased with proceeds of land inherited from plaintiff's father.**

In an action by one who claimed that the land in question was purchased by his mother and her second husband with proceeds of land in another state which belonged to plaintiff's deceased father, against heirs of his mother and her second husband, the burden of proof was on plaintiff to show that title to the land which had belonged to his father, and which had been acquired by the joint efforts of his mother and his father, had been in his father alone.

2. **Appeal and error ⬅➡1008(1)—Finding that express trust was not created sustained.**

Finding that express parol trust had not been ingrafted on the legal title of the land purchased must be sustained on appeal.

3. **Trusts ⬅➡343—Acceptance of share of proceeds under oil and gas lease held to estop claim of trust on whole of land.**

Where a party with the full facts before him accepted a one-fourteenth interest of bonus money as his share due under an oil and gas lease, he waived any claim to a greater right and interest than an undivided one-fourteenth that he inherited from his mother, and was estopped from claiming that an express parol trust of the whole in his favor had been entered into on the purchase of the land with proceeds of land inherited by him from his father.

4. **Limitation of actions ⬅➡103(3)—Conveyance of land subject to alleged express parol trust without protest held to put in motion 10-year statute of limitations.**

The fact that holders of legal title to land subject to an alleged parol trust were permitted to convey part of the land with knowledge of those who asserted the trust, without their protest, put in motion the 10-year statute of limitations, being a repudiation of the trust.

5. **Descent and distribution· ⬅➡90(4)—Extent of burden of proof on one claiming land purchased with proceeds of land inherited by him in another state, stated.**

In an action of trespass to try title by one who claimed that the proceeds of the land in another state which he and two others had

inherited from their father, against heirs of his mother and her second husband, where the law of the other state was that a widow could by election within 12 months from a grant of letters testamentary or administration of her husband's estate take a child's share and bar her dower interest, and that if title was taken during marriage the husband and wife each owned half, the burden was on plaintiff to show that title was not taken in the sole name of his father, or that an administration had been taken out on the estate of his father within one year after his death, and that plaintiff's mother had failed to elect to take a child's part or one-fourth undivided interest in the land, and in absence of such proof plaintiff could not claim a greater share than one-fourth, or a child's part, of the land in the other state.

6. **Limitations of actions ⬅➡37(2)—Two-year statute held to apply to trust resulting from fraudulent investment of money.**

If a person came into possession of money of another and without his consent invested it in land and took title in his own name, such act would constitute fraud and create a resulting trust in favor of the owner of the money from its date or the date of its discovery, and limitation would start against his claim and interest and he would become barred in two years.

7. **Trusts ⬅➡41—No presumption indulged to create parol trust after 36 years.**

In an action of trespass to try title by one who claimed that proceeds of land which he inherited were used to buy land, against heirs of the purchaser, although from the deed it was not clear from what source the purchaser got the money, after 36 years no presumption will be indulged in absence of clear and satisfactory proof to establish an express oral trust on the land in plaintiff's favor.

8. **Trusts ⬅➡17, 18(3)—Trust resulting from furnishing purchase money held barred.**

Where land was purchased partly from proceeds from land to which the purchaser had title and partly with proceeds from land inherited by the purchaser's stepdaughter from her father, the statute of frauds would prevent a parol express trust to give the stepdaughter an interest in the land.

9. **Trusts ⬅➡43(2)—Parol testimony to ingraft trusts not favored.**

The law looks with disfavor upon the mere use of parol testimony to ingraft trusts.

Appeal from District Court, Erath County; J. B. Keith, Judge.

Action by G. W. Couch against T. P. Sparger and others. From a judgment for plaintiff for less than he asked, plaintiff appeals. Affirmed.

Estes, Payne, Morris & Pressly, of Fort Worth, for appellant.

W. J. Oxford, of Stephenville, for appellees.

---

COBBS, J. G. W. Couch, appellant, sued T. P. Sparger, J. W. Sparger, W. H. Sparger, Eula Bailey and husband, C. W. Bailey, Fleet Galloway and husband, M. E. Galloway, and S. C. Couch in trespass to try title to recover 126 acres of land out of the R. C. Smith survey in Erath county and 10 acres of the M. V. Robinson survey in Erath county, and against T. P. Sparger and J. W. Sparger for certain live stock, and for $10,000 in money.

The ground of recovery as alleged was that Elizabeth Couch Sparger and Thomas Sparger during their lives held certain personal property and the real estate described in the petition in trust for appellant since the death of his father, which occurred in Georgia in 1866. That John Couch was the first husband of his mother, Elizabeth Couch Sparger, and at his death died seized and possessed of 160 acres of land in Walker county, Ga., which descended to him and to his brother, S. C. Couch, and sister, Mary Couch. After the death of his father, John Couch, his mother, Elizabeth Couch, married Thomas Sparger. That they sold the Georgia property belonging to John Couch, and the proceeds were by them invested in the lands in controversy herein, and held said property as trustee for his brother, S. C. Couch, and himself. That his sister, Mary Couch, never married, and having died without issue was at the time of the filing of this suit entitled to five-twelfths undivided interest in the two tracts, which interest descended to appellant.

By an agreement between appellant and his mother, Elizabeth Couch Sparger, and Thomas Sparger, the proceeds of the Georgia lands were invested in lands in Tarrant county, Tex., the legal title being taken in the name of Thomas Sparger with the understanding and agreement at the death of Elizabeth and Thomas Sparger he should have the Tarrant county land. Thereafter the Tarrant county land was sold by Thomas and Elizabeth Sparger and the proceeds invested in the Erath county lands under the same trust agreement. Eula and C. W. Bailey, W. H. Sparger, S. C. Couch, Fleet and M. E. Galloway, each filed disclaimers, and were thereby eliminated from the suit.

T. P. Sparger and J. W. Sparger, appellees, filed general demurrer and general denial plea of not guilty, and pleas of two, three, five, and ten years' statute of limitation against plaintiff's claims to ingraft an express parol trust on the land. Further pleaded estoppel on the ground that the land sued for was the community property of their parents, Elizabeth Couch Sparger and Thomas Sparger, and they inherited each $12/70$ undivided interest in said land, and since their death had purchased the $12/70$ interest inherited by Fleet Galloway, Eula Bailey, and W. H. Sparger, each respectively, and $5/70$ interest inherited by S. C. Couch, mak-

ing $41/70$ they claim by purchase, which together with that they together inherited from their parents makes a total of $65/70$. They admitted appellant was entitled to $5/70$ undivided interest which he acquired by inheritance from his mother, Elizabeth Couch Sparger.

The case was tried by the court without a jury, and judgment was rendered in favor of appellant for $5/70$, or a $1/14$, undivided interest in the land in controversy and for appellees, T. P. and J. W. Sparger, for the other $65/70$, or $13/14$, thereof.

The court made lengthy findings covering every phase of the case fully supported by the testimony.

[1] The first question to be determined is the interest acquired by appellant in the estate of his father and mother in respect to the 160 acres of the Georgia land owned by his father and mother. His father died in Georgia in 1863 leaving his mother surviving and the three children, himself, brother, and sister. Up to the death of his father, his mother and the children were residing thereupon having acquired the property by their joint efforts. If the title to the land were taken in the name of both husband and wife, the wife would own one-half undivided interest in the land. If taken in the name of the husband, John Couch, alone, under the laws of Georgia the title descended to his children and his wife, share and share alike; the wife taking only a child's part. This was shown to be the law in Georgia in such cases.

In this case, as appellant was asserting ownership by inheritance from the father, to the exclusion of the wife, the burden of proof was on him to show that title to the Georgia land was not taken in the name of the husband and wife, but was taken in the name of the husband alone. The appellant having failed to make such proof, we must overrule appellant's contention and hold the interest taken by the children from the husband and father by descent would only be one-half and that the remaining one-half belonged to the surviving wife, mother of the children.

[2] After the marriage of Elizabeth Couch with Thomas Sparger, her second husband, in 1879, she claiming a one-half interest, for a consideration of $800, of which $600 was in cash, the balance to be paid at a later date. they sold the land. Of this money $500 was immediately invested in 130 acres of land in Tarrant county, and the legal title to the land was taken in the name of her second husband, Thomas Sparger. In 1883 he and his wife sold the Tarrant county land for a consideration of $700, taking one horse and the balance in cash, and in 1884 purchased 140 acres of the R. C. Smith survey in Erath county, for a consideration of $800, of which $300 was cash, and two vendor's lien notes of Thomas Sparger alone for $250 each were

executed and delivered and the legal title was taken in his name.

After a period of more than 40 years after the purchase of the Tarrant county land, and after some 36 years after the purchase of the Erath county land, and after the death of both the surviving wife of the first husband and the death of the second husband in whose name was the legal title, appellant now seeks to establish a trust in his behalf for the amount of his money that he claims was invested in each of said purchases. To do this he was required to do so by very clear and satisfactory evidence. On this issue the trial court found against him, and we do not feel from the record before us that the trial court erred in refusing to establish such a trust. There being an issue of fact, as to whether an express parol trust had been ingrafted upon the legal title to the land, and the issue pro and con submitted, the court found against such trust, and his finding that the facts and circumstances in evidence failed to establish it by clear and satisfactory evidence must be sustained, for that was a function of the trial court, and no appellate court would be justified by denying to the trial court the duty imposed specially upon it.

[3] We think the facts justify the conclusion that appellant with the full facts before him in accepting in full settlement a one-fourteenth interest of the bonus money as his share due under the oil and gas lease, and permitting, without question, the act of the attorney in fact to pay the sum of $1,000 of said bonus having full knowledge of all the facts, constituted a waiver of any claim to a greater right and interest than a one undivided one-fourteenth, that he inherited from his mother, and thereby further estopped from claiming an express parol trust in the whole in his favor.

[4] When Thomas and Elizabeth Sparger were permitted, at least without objection, to convey in 1890 two of the separate tracts of the Erath county land with their knowledge without protest, showed a clear repudiation of the alleged parol trust, which act had the legal effect to put in motion the statute of limitations of 10 years before filing this suit that barred appellant's claim, and the trial court did not err in so finding and holding.

[5] The Georgia laws in respect to acquiring estates between husband and wife to descent and distribution were proven up by a Georgia lawyer, Mr. J. N. Johnson, who testified, among other things:

"Any landed interest that the husband and wife acquired during their marriage would have had to be acquired in the name of both of them."

And he further testified:

"That section 2451 in 1860 and 1870, of the Laws of Georgia, reads as follows: 'Upon the death of the owner of any realty or negroes, which estate survives him, the title vests immediately in his heirs at law.'"

From this, it will be noted that this section applies exclusively to the real property owned by the husband, and in determining who are the heirs, he quotes from section 2452, subd. 3, as follows:

"If there are children and those representing the deceased's children, the wife shall have a child's part unless the shares exceed five in number, in which case the wife shall have one-fifth part of the estate."

And he further testified:

"That section 1714 of the Georgia Laws in 1860 and 1870 provided that dower may be barred (3) by election of the widow within 12 months of the grant of letters testamentary or administration of the husband's estate, to take a child's part of the real estate in lieu of dower."

And he further testified:

"The right of the wife from 1860 to 1870 of a dower interest or a child's part were elective by the wife. The election to take a child's part of the real estate must have been made by her within 12 months from the grant of letters testamentary or of administration of her husband's estate."

Among other things, John W. Estes, attorney and witness for plaintiff, testified:

"I went to the county site of Walker county, Ga., to get copies of the record, that related to this land. I did not get them. There was no record showing any transactions prior to 1883. The courthouse was burned then, and all the records were lost by fire. * * * I didn't see the men from whom this land was procured by the Couches. I made some inquiry with reference to that matter, but could get no information; it had been so long."

And he further testified:

"I did not undertake to locate whether there was ever a deed to John Couch and Elizabeth Couch of the title. I did not ascertain anything about that. I made no inquiry as to the origin of the title."

There was no conveyance or other instrument introduced in evidence showing, or tending to show, to whom the 160 acres of land in Walker county, Ga., was with, whether to John Couch or Elizabeth Couch, either or both, nor any proof on the subject from any source whatever nor any investigation made in respect thereto.

Taking the testimony of the witness Johnson under the law of Georgia, Elizabeth Couch would have an undivided one-half interest in the land. The burden of proof was on appellant, who claims he owns for himself and brother and sister the entire tract and all interest therein to the exclusion of any claim of his mother, to show that the title was not taken to the tract in the sole

name of his father, or that an administration had been taken out on the estate of John Couch, deceased, within one year after his death and Elizabeth Couch (now Sparger) failed to elect to take a child's part, or one-fourth, undivided interest in said land. In the absence of such proof, appellant was in no position to claim a greater interest in the Georgia land than a one-fourth interest, which was a child's part.

A strong circumstance against appellant's contention lies in the fact that the purchase of the Georgia land was through a power of attorney given by appellant and the other heirs to Thomas Sparger to sell and make the title to the land, at which time Mary Couch was a minor. The land was sold for $800, but $200 of the purchase price was retained until Mary should become of age. That was a child's one-fourth portion. It can be safely argued from this circumstance all the interested parties, of whom appellant was one, recognized, if not agreed, that the wife's part was the same as the child's meaning of the cash paid Elizabeth's part was $200, Sam Couch $200, appellant, G. W. Couch, $200, and Mary $200. Of this $600, $500 was invested in the 130 acres in the Tarrant county, Tex., land in November, 1879, a few weeks after the sale of the Georgia 160 acres of land, when the legal title was taken in the name of Thomas Sparger.

[6] If Thomas Sparger came into possession of any money belonging to appellant, and without his consent invested it in the Tarrant county lands, and took title thereto in his name, such would constitute fraud and create a resulting trust in favor of appellant from its date or the date of its discovery, and limitation would start against appellant's claim and interest and become barred in two years.

After Mary Couch became 21 years of age, her part of the money was sent to Thomas Sparger and used by him supposedly in completing the payment on the Erath land. The $700 derived from the Tarrant county land and the $200 derived from the sale of Mary Couch's interest in the Georgia land was all paid on the Erath county land.

According to the testimony, the $700 received from the Tarrant county land and $200 from Mary Couch's interest in the Georgia land was invested in the Erath lands would make a total of $900; whereas, the deed recites on its face from R. C. Smith and wife to Thomas Sparger a consideration of only $800. It would appear from this all the money received from the Tarrant land of Mary Couch was not invested in the Erath 140 acres of land of the R. C. Smith survey.

[7] From the recitation in the deed that the $700 in cash, received from sale of the 130 acres of Tarrant land, was paid, it is to be seen that 8½ months thereafter, when Thomas Sparger purchased the 140 acres of the R. C. Smith tract, he only invested $300

thereof in cash, in that land, and did not invest the full $700 so obtained from sale of Tarrant land; but for the deferred payment of $500 he executed two notes due two and three years after date. The inquiry there arises: From what source did he obtain this money to discharge these two notes? After this great lapse of time, no presumption will be indulged in, in the absence of clear and satisfactory proof, to favor the appellant's contention that a trust was ingrafted on the Erath county land to favor him.

To do so he must go further and show that his money was invested in the Erath county land on an express agreement between himself and Thomas Sparger and Elizabeth Sparger that the title was taken in the name of Thomas Sparger and to be held in trust for him to the extent of his money, if any was invested there, bears to the real consideration paid. This he failed to do by any satisfactory or competent testimony.

There are two tracts of land in controversy in this suit, one the 126 acres of the R. C. Smith survey and 10 acres of the M. V. Robinson survey, acquired more than six years after the first tract, and there is no testimony that any part of the money derived from the Tarrant county lands went into the purchase of the 10 acres of land purchased in 1890 more than six years after the purchase of the R. C. Smith 126 acres and nearly ten years after the sale of the Tarrant county lands.

[8] The statute of frauds would condemn any parol express agreement such as appellant contends for to give any interest to Mary Couch in the land. Besides, it is not shown for what purpose her money was used, nor how expended.

[9] The law looks with disfavor upon the mere use of parol testimony to ingraft trusts, but the proof must come up to the requirement. In the case of Smalley v. Paine, 62 Tex. Civ. App. 62, 130 S. W. 747, the court says:

"It is a well-settled doctrine of equity that, in order to ingraft a parol trust upon the legal title to property, proof must be clear and satisfactory."

See Carl v. Settegast (Tex. Civ. App.) 211 S. W. 511; Rudasill v. Rudasill (Tex. Civ. App.) 206 S. W. 983; Watts v. McCloud (Tex. Civ. App.) 205 S. W. 381.

In King v. Gilleland, 60 Tex. 274, the Supreme Court spoke through Mr. Chief Justice Willie, as follows:

"Perhaps there is no fact which, in the trial of civil causes, is required to be so satisfactorily approved, as that which engrafts a parol trust upon the legal title. * * * Whilst it is not necessary that it should be established beyond a reasonable doubt, nothing must be left to conjecture, nor must presumptions be indulged which are not the usual and almost necessary deductions from the facts proved.

"After a great length of time has elapsed and parties have held possession of the land for years under the legal title without question, and the witnesses who might have established their right, to such possession beyond all controversy are dead, they should not be readily disturbed by evidence within the knowledge of living witnesses which raises a presumption in favor of the trust, when, if deceased's witnesses could be heard to speak, such presumption might be easily rebutted." Yndo v. Rivas (Tex. Civ. App.) 142 S. W. 925.

The proof fails to show what definite and certain interest appellant had in the Georgia land; what portion of the proceeds, if any, of the Georgia land, belonged to him; what portion, if any, of the proceeds of his money was invested in the Tarrant county lands; what portion of the $700 proceeds from the sale of the Tarrant county land belonged to him; what portion of the $300, if any, cash payment on the Erath 140 acres, belonged to him. As to all these and many other matters we are left to conjecture. We do not know what money was used and from what source obtained by Thomas and Elizabeth in paying off the vendor's lien notes which matured more than two and three years, respectively, after the Erath county lands were purchased.

There is no satisfactory proof of any express parol agreement shown between Thomas and Elizabeth Sparger and appellant that Thomas Sparger would invest appellant's money in the Tarrant county land and take title in the name of Thomas Sparger and hold it in trust for appellant, and thereafter such an agreement, if any, expressly applied to the Erath county lands.

We have very carefully read and considered the record and given due consideration to appellant's briefs, assignment, and proposition, and finding no reversible error assigned, the judgment of the trial court is affirmed.